UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEANDREA LYNETTE CLARK,

      Plaintiff,

v.

MUSKEGON POLICE OFFICERS
KORY LUKER, EMILIO TREJO,
STEVEN STOUT, and RICHARD
BLEICH, Jointly and Severally,

      Defendants.
_____/

File No.  1:06-CV-264

HON. ROBERT HOLMES BELL

# O P I N I O N

Plaintiff Teandrea Lynette Clark filed this action against four City of Muskegon Police Department detectives (Kory Luker, Emilio Trejo, Steven Stout, and Richard Bleich), alleging a claim under 42 U.S.C. § 1983 for violation of her civil rights, as well as five state law tort claims for false arrest, false imprisonment, trespass, malicious prosecution, and invasion of privacy.  This matter is currently before the Court on Defendants' motion for summary judgment.  For the reasons that follow, Defendants' motion will be granted.

## I.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and

assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.; see generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

This civil rights action arises out of the April 22, 2004, search of Plaintiff's home and Plaintiff's arrest. The events giving rise to this search are not in dispute.

In April 2004, the City of Muskegon Police Department was investigating a complaint concerning fraudulent credit card transactions by two suspects at the local Target retail store. The police were advised by Leteasha Davis, an asset protection specialist at the Target store,

that on February 13, an individual left the store after his attempts to purchase a digital camcorder with two credit cards under the name James Botts were denied. The credit card company advised Davis that the James Botts account was fraudulent. On April 4, 2004, the same individual purchased a digital camera with a credit card under the name Frank Burnett. Davis followed him out the store and saw him get into red Corvette driven by a second male suspect. The credit card company advised Davis that the Frank Burnett account was fraudulent. On April 6, 2004, Davis saw the two male suspects walking through the store. The second male suspect (the driver of the red Corvette) pointed out some electronic items in the store to the first suspect and then left the store. The first suspect purchased the electronic items using a credit card with the name Marlon Botts. When the first suspect left the store he got into the red Corvette driven by the second suspect. After they left, Davis determined that the Marlon Botts credit card was also fraudulent. (Pl. Ex. D & Def. Ex. 1, Incident Rpts. 14-15; Pl. Ex. C & Def. Ex. 2, Prelim. Hr'g Tr. 4-5, 8-10.)

Through LEIN records the police determined that the red Corvette driven by the second suspect was owned by Teandrea Clark of 2136 Sanford. The police determined from their CLUES database that Clark associated with Dameion Easley. The photograph of Easley in the police files matched the Target store's surveillance video image of the second suspect – the driver of the red Corvette. Easley's address was also listed as 2136 Sanford. (Incident Rpts. 19)

On April 22, 2004, Defendants Luker, Bleich, and Stout went to 2136 Sanford to speak with Easley and Plaintiff about their involvement in the credit card fraud. They knocked on the front and the back doors but there was no response. The detectives noted that surveillance cameras were mounted at the front and rear of the house. (Incident Rpts. 20, 44.) The detectives believed that someone was home because the red Corvette was parked in the garage and a green Dodge Neon, also registered to Plaintiff, was parked in the alley. The detectives waited down the road to see if anyone came out after they left. (Prelim. Hr'g Tr. 16.) Easley came out fifteen or twenty minutes later and drove away in the green Dodge Neon, which was also registered to Plaintiff. (Prelim. Hr'g Tr. 17.)

Defendants followed Easley, who appeared to be driving in a manner designed to elude tails. Defendants observed that he was not wearing a seatbelt so they called for a marked unit to make a traffic stop. (Incident Rpts. 20; Prelim Hr'g Tr. 18.) When the vehicle was stopped Easley was arrested for driving without his operator license and the car was searched and impounded. (Incident Rpts. 21; Prelim. Hr'g Tr. 18.) Among the items found in the car were a book on identity fraud, blank payroll style checks, several Michigan identification cards, and hospital patient records. Easley's three-year-old daughter was in the car with him, so a call was made to the girl's mother to come and pick her up. (Incident Rpts. 21-22; Prelim. Hr'g Tr. 18.)

Detective Luker left to obtain a search warrant, and sent detectives Trejo, Stout, and Bleich to 2136 Sanford to secure the house until a search warrant was issued. (Incident Rpts.

22.) The detectives arrived at the house between 12:00 and 12:30. (*Id.* at 29, 41.) After they had knocked for several minutes and no one answered the door, Detective Trejo contacted Detective Luker.  After discussing the situation, they decided there were exigent circumstances and that they should enter the residence to secure it.  (*Id.* at 41.)

That same day Plaintiff returned from class between 11:00 and 12:00 and laid down. (Clark Dep. 23.)  The next thing she heard was a knock on the front door.  The knocking continued for five or ten minutes.  (*Id.* at 26.)  Plaintiff looked out the window and saw men and a car that she did not recognize. (*Id.*)  After five minutes of knocking on the front door Plaintiff heard knocking on the back door.  (*Id.* at 27.). Plaintiff testified:

> When they went around to the back door they said, Teandrea, open the door, Muskegon Police Department, and when I heard them say Muskegon Police Department, I put on clothes and attempted to go down the stairs.

(*Id.* at 28.)  As she came down the stairs Detectives Trejo, Stout, and Bleich kicked in the back door, came into the house with their guns drawn, and told Plaintiff to get on the ground until they secured the house.  (*Id.* at 31-32, 82.)  The detectives did a protective sweep to make sure there was no one else in the house, and then sat at the kitchen table with Plaintiff until Detective Luker arrived.  (*Id.* at 32-33.)  After Detective Luker arrived with the search warrant, Defendants executed a search throughout the house, which involved going through drawers, photographing items, collecting items, and taking an inventory.  (*Id.* at 59.)  Items seized included computers, a magnetic strip credit card programmer, laminating materials,

a partially completed ID under the name Heather Williams, hospital patient records, and high-end electronic devices. (Incident Rpts. 21-22.)

Plaintiff was arrested and charged with possession of a fraudulent financial transaction device and forgery of a financial transaction device. (Def. Ex. 6.)[1] Plaintiff's bond was set at $500,000. At a preliminary hearing on May 10, 2004, the district court judge found probable cause to believe that Plaintiff had committed the crimes charged, either as an aider or abettor or as a principal and accessory, and bound her over for trial. (Prelim. Hr'g Tr. 67.) On June 4, 2004, Plaintiff's bond was reduced to $1,000. (Pl. Ex. E, Bond Hr'g Tr. 5.) Plaintiff posted bond and was released that day, having spent 43 days in jail. (Clark Dep. 87-88.) On June 14, 2004, Plaintiff filed a motion to quash the criminal complaint on the basis that there was insufficient evidence presented at the preliminary examination to establish probable cause that she had committed either of the crimes. (Def. Ex. 7.) The Circuit Court Judge denied Plaintiff's motion by order dated July 15, 2004. (Def. Ex. 9.) The prosecutor's office ultimately dismissed the charges against Plaintiff without prejudice on October 18, 2004. (Clark Dep. 94-95.) Plaintiff's Neon was released to her on June 25, 2004, and her Corvette was released to her on February 24, 2005. (Clark Dep. 95.)

**III.**

Plaintiff alleges in Count V of her first amended complaint that Defendants violated her Fourth and Fifth Amendment rights by entering and searching her home without a

---

[1] Easley was charged with the same offenses as Plaintiff. Easley entered a guilty plea to possession of an altered financial transaction device. (Pl. Ex. F, Easley Aff. ¶ 3-5.)

6

warrant, exigent circumstances, probable cause, or consent; by securing a warrant on the basis of false and misleading information; and by arresting her without probable cause. (Am. Compl. ¶¶ 18-19, 28-38.)

**A.  Warrantless Entry**

The first issue for the Court's consideration is whether Defendants' warrantless entry into the home violated Plaintiff's Fourth Amendment rights. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted)). The Supreme Court has, however, "carefully crafted certain exceptions to the warrant requirement, one of which is the exigent-circumstances exception." *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006). "Pursuant to this exception, the government can overcome the presumption that a warrantless entry is unreasonable if it proves that 'the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Brigham City*, 126 S. Ct. at 1947).

The Supreme Court has identified four situations that may give rise to exigent circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Huffman*, 461 F.3d at 782 (citing *Brigham City*, 126 S. Ct. at 1947). Because warrantless searches are presumptively unreasonable, the government bears a "heavy burden" of proving

exigency. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984)). In determining whether sufficient exigent circumstances exist to justify a warrantless entry the court must consider the "totality of the circumstances" and the "inherent necessities of the situation at the time." *United States v. Brown*, 449 F.3d 741, 744-45 (6th Cir. 2006) (internal quotation marks omitted). "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002).

In evaluating Defendants' warrantless entry into Plaintiff's home, the Court's first consideration is whether they had probable cause to enter the residence. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (explaining that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home"); *Brown*, 449 F.3d at 745 ("To justify a warrantless entry based on exigent circumstances, there must also be probable cause to enter the residence."); *United States v. Chambers*, 395 F.3d 563, 572 (6th Cir. 2005) ("The police . . . may enter a house without a warrant (as well as execute a search warrant without knocking and announcing) when 'probable cause plus exigent circumstances' exist."). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Brown*, 449 F.3d at 745 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)).

Here there can be no doubt that Defendants had probable cause to believe they would find evidence of a crime in the house at 2136 Sanford. Defendants had evidence that Easley

had been involved in two fraudulent credit card purchases, that Easley lived at 2136 Sanford, that Easley had failed to answer their knock in the morning despite being in the house, that Easley had surveillance cameras on his doors, that Easley drove in an evasive manner after they had knocked at his door, and that Easley's car contained further evidence to suggest his involvement in credit card fraud. The objective facts known to Defendants were sufficient to give them probable cause to believe that they would find evidence of criminal activity at Easley's residence.

Plaintiff's argument that Defendants had no evidence that she was personally involved in the fraudulent credit card transactions at the Target store has no bearing on the issue of whether Defendants had probable cause for the search of 2136 Sanford. "Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (quoting *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* at 556.

The Court's second consideration focuses on whether there were exigent circumstances to justify the warrantless entry. Defendants contend that their warrantless entry was justified by their concern that evidence of a crime would be destroyed. In order to establish that the circumstances justified the warrantless entry to prevent the destruction

of evidence, Defendants must demonstrate:  "(1) a reasonable belief that other persons are inside the building; and (2) a reasonable belief that these persons are likely to destroy evidence of a crime."  *United States v. Elkins*, 300 F.3d 638, 656 (6th Cir. 2002).  *See also United States v. Lewis*,  231 F.3d 238, 241 (6th Cir. 2000); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 585 (6th Cir. 1998); *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988).

Defendants knew that Easley lived at 2136 Sanford with Plaintiff.  They knew that Plaintiff worked third shift at Life Care Hospital.  (Incident Rpts. 19).  They knew that Plaintiff was the owner of the green Neon and the red Corvette.   (Incident Rpts. 19-20.) They knew that both cars were parked at the house on the morning of April 22, and that the red Corvette was still there when they returned around noon.  Detective Luker indicated that "because Teandrea works 3rd shift and the Corvette was there, I thought it was very possible she was home."  (Incident Rpts. 22.)  The facts known to the Defendants were sufficient to give them a reasonable belief that Plaintiff was in the house.

In support of their concern that the person in the house was likely to destroy evidence of a crime Defendants point to the fact that because three detectives had been to 2136 Sanford that morning, the occupants of the house would likely know about the investigation. (Incident Rpt. 41).  The presence of cameras at the front and rear of the home and the failure of Easley or any one else to answer the door increased their concern that evidence might be destroyed.  (Incident Rpts 45.)   This belief was supported by the fact that Easley drove as if to elude any tails when he left the house.  (Incident Rpts. 20.)  Defendants also note that

10

the occupant of the house could have been tipped off about Easley's arrest by Easley's child's mother, or by one of the many witnesses to Easley's arrest. (Incident Rpt. 22). Their concern about destruction of evidence was increased by the presence of the red Corvette and the failure of anyone to answer the door when they returned around noon. Before concluding that they had exigent circumstances to enter the house the detectives at the house called Detective Luker who was at the prosecutor's office to discuss the situation. The detectives did not force entry into the house until they had received permission from the prosecutor's office to force entry and to secure the house until the search warrant was issued. (Incident Rpts 45.)

Where police have objective grounds to believe that suspects were aware that police were close on their trail, the Sixth Circuit has "regularly held that exigent circumstances existed to support a warrantless search of the location in question." *Elkins*, 300 F.3d at 656. The facts known to the police officers in this case are undisputed. Given Easley's failure to answer the door to the detectives, the presence of surveillance cameras, Easley's evasive driving when he left the house, the presence of a second car belonging to Plaintiff at the house, the communication of Easley's arrest to his child's mother, and the public nature of his arrest, the detectives had objective grounds to believe that Easley and his accomplices were aware that the police were close on their tail. Accordingly, under the authority of *Elkins*, exigent circumstances existed to support the warrantless entry.

Finally, "the scope of the intrusion must be circumscribed by the exigencies that justified the warrantless search." *Brown*, 449 F.3d at 745 (citing *Mincey v. Arizona*, 437 U.S.

385, 392 (1978)). Here the evidence is undisputed that the police first attempted to communicate with Easley by a knock-and-talk. It was only after Easley refused to answer the door, Easley was arrested, and no one answered the door when the police returned to the house, that the need for a warrantless entry presented itself. When the detectives entered the house, they did so for the sole purpose of preventing the destruction of evidence. The undisputed evidence reveals that their actions upon entering the house were limited to performing a protective sweep for their own safety, and then waiting with Plaintiff until the search warrant arrived. The Sixth Circuit has recognized that "because evidence may be removed or destroyed before a warrant can be obtained, an officer does not violate the Fourth Amendment by securing the area to be searched and waiting until a warrant is obtained." *United States v. Taylor*, 248 F.3d 506, 513 (6th Cir. 2001).

The Court concludes that Defendants' warrantless entry, after knocking and announcing, was supported by probable cause, was justified by exigent circumstances, and was circumscribed in scope to the limited purpose of securing the contents of the house pending the anticipated arrival of a search warrant. The entry was reasonable and did not violate Plaintiff's Fourth Amendment rights.

**B.  Search Pursuant to the Warrant**

Plaintiff alleges in her amended complaint that the search of her house pursuant to the warrant violated her Fourth Amendment rights because "Defendants authored police reports that contained blatant lies," (Am. Compl. ¶ 7), and the warrant was secured "on the basis of false and misleading statements by Defendant Officers . . . ."  (Am. Comp. ¶ 28.)

When questioned about the false information in interrogatories and at her deposition, Plaintiff identified two allegedly false statements: first, the reports falsely described the Corvette as having a white top, when in fact it had a tan top; and second, the reports falsely noted the Lexus was at the house in the morning, when in fact it was not there because Plaintiff had driven it to school. (Clark Dep. 84-85).

There is reference in the police incident reports to a red corvette with a white top (Incident Rpts. 14), but the affidavit and search warrant correctly described the Corvette as having a tan top. (Pl. Ex. B at 2.) There is no mention of the Lexus in the warrant application. (Pl. Resp. Ex. B.) Plaintiff has made no effort to show how either of the alleged misstatements in the police incident reports was material to the probable cause determination for the search warrant. Accordingly, the Court finds no evidence to suggest that the warrant was secured on the basis of false and misleading statements, and no constitutional violation stemming from the search pursuant to the warrant.

**C. Arrest of Plaintiff**

Plaintiff contends that Defendants did not have probable cause to arrest her. Defendants contend that Plaintiff is collaterally estopped from relitigating the issue of probable cause for her arrest because the issue has already been determined by a state district court judge at the preliminary hearing and affirmed by the state circuit court.

This Court applies "the state law of collateral estoppel when deciding whether the state court's determination of probable cause at the preliminary hearing has preclusive effect in this § 1983 action." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing

*Haring v. Prosise*, 462 U.S. 306, 313 (1983)).

> Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citing *People v. Gates*, 434 Mich. 146, 156, 452 N.W.2d 627, 630-31 (1990)). A civil rights plaintiff is collaterally estopped from contesting probable cause in a § 1983 action after a state court has made a probable cause finding and bound him over for trial. *Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).

Plaintiff was not arrested until the search of her home was concluded. At the time of her arrest Defendants had the same evidence that was presented at the preliminary hearing. The issued determined by the state court was that there was probable cause to prosecute Plaintiff. The state court did not specifically address probable cause to arrest Plaintiff, but because the evidence on which the officers relied on in making the arrest was the same evidence the state court determined was sufficient to support the prosecution, the same issue has already been actually litigated and necessarily determined by the state court.

Plaintiff contends that the issues are not the same and that *Coogan* is distinguishable because Plaintiff is contending that Defendants supplied the prosecutor's office and the court with a false version of the facts.

Plaintiff does not specify what information was false. She merely alleges that "Defendant Luker provided misleading information to obtain probable cause and the search

14

warrant for Plaintiff's residence," (Pl. Resp. 9), and that "in the present matter, Defendant wanted a reason to enter and arrest Ms. Clark in order to create sufficient exigent circumstance that would allow him the authority to search Ms. Clark's residence." (Pl. Resp. 8.) Plaintiff also contends that "[n]one of the purported evidence within Defendant's possession prior to the arrest of Plaintiff did not [sic] implicate her in any criminal activity. None of the item's [sic] found in Easley's car were illegal or criminal." (Pl. Resp. 9.)

Plaintiff's suggestion that Defendants needed to arrest her in order to create exigent circumstances is incorrect as a matter of fact and of law. As discussed above, Defendants' entry into the home was based upon probable cause to believe they would find evidence of a crime, and their exigent circumstances were based upon a perceived need to prevent the destruction of that evidence. The arrest of Plaintiff was not essential or even relevant to justify their entry into the home.

Although Plaintiff claims that her arrest was unconstitutional because it was based upon false testimony, she has not identified any false statements that were made to either the judge who issued the warrant or the judge who found probable cause at the preliminary hearing. In fact, Plaintiff acknowledges that Defendants Luker, Trejo, Stout, and Bleich "all testified at the preliminary examination that there was no direct evidence plaintiff Clark was involved with any fraudulent transactions." (Pl. Resp. 12.). In other words, Plaintiff is not challenging the truth of the Defendants' testimony, but is instead simply challenging the district court's legal determination that the evidence was sufficient to establish probable cause to hold her responsible, at the very least, under an aiding and abetting theory. The issue of

15

the sufficiency of the evidence against Plaintiff was actually litigated and necessarily determined in the state court preliminary hearing and Plaintiff had a full and fair opportunity to litigate the issue in that earlier proceeding.  Plaintiff is accordingly collaterally estopped from challenging the probable cause for her arrest in this action.

In light of the Court's determination that Plaintiff cannot successfully challenge the constitutionality of Defendants' warrantless entry into her home, their search of her home pursuant to warrant, or her arrest at the conclusion of the search, the Court finds that Defendants are entitled to summary judgment on Count V of Plaintiff's Amended Complaint which alleges a claim under 42 U.S.C. § 1983.

**IV.**

Defendants contend that Plaintiff's remaining state law tort claims are also subject to dismissal for the reason that they are barred by the doctrine of governmental immunity.

Plaintiff's state law tort claims of false arrest (Count II), false imprisonment (Count III), trespassing (Count IV), malicious prosecution (Count VI), and invasion of privacy (Count VII), are largely dependent on a finding of unlawful conduct or lack of probable cause.  This Court's discussion with respect to Plaintiff's federal civil rights claim may very well suggest that Defendants are entitled to summary judgment on these state law claims as

well, or, in the alternative, that the state law claims are barred by governmental immunity.[2] The Court is not required, however, to reach either of these questions.

District courts have discretion to refuse to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."

---

[2]The Michigan Government Tort Liability Act, provides in pertinent part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

M.C.L. § 691.1407(2), (3).

*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.1996); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

The Court finds that the interests of justice and comity are best served by a state court's resolution of the remaining state law claims.  Accordingly, because no federal claims remain, this Court declines to exercise supplemental jurisdiction over the state law tort claims.  The state law tort claims alleged in Counts II, III, IV, VI, and VII will accordingly be dismissed without prejudice.

An order and judgment consistent with this opinion will be entered.


Date:     August 29, 2007            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE